UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HECTOR VARGAS,

                        Plaintiff,                    05 Civ. 9992 (PKC)

       -against-

                                        MEMORANDUM
                                      AND ORDER

SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL UNION NO. 325-32J, and
2727 REALTY, LLC,

                        Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

                Plaintiff Hector Vargas brings this action against his former employer, 2727

Realty, LLC ("Employer"), and his union, Service Employees International Union Local Union

No. 32B-32J ("Union"), seeking compensatory and punitive damages, reinstatement to his

position as a superintendent with back pay, costs and attorney's fees and an injunction.

Underlying Vargas's claims is his contention that he was wrongfully terminated from his

position as superintendent for engaging in union activities and that he was wrongfully ejected

from a basement "party/storage space" that he claims to have occupied with the consent of the

defendant-Employer.  Plaintiff's claims have been the subject of an arbitration, in which he was

represented by his present counsel.  The arbitrator found the Employer's termination of

plaintiff's employment to have been for "just cause".  The Employer also prevailed in an action

it brought in New York City Civil Court to eject plaintiff from the party/storage space.  Plaintiff

also brought an unfair labor change against his Union before the National Labor Relations Board

which was "deferred" by reason of the arbitration.  Plaintiff has appealed unsuccessfully within the NLRB.

Plaintiff contends that the arbitration award should be "reversed" as the arbitrator's decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, exceeds his authority under the collective bargaining agreement, was corrupt, fraudulent and partial and without due process of law." (Amended Verified Petition at ¶ 18)  Defendants rely upon the general principal that only the union, and not a union member, is a party to an arbitration conducted pursuant to a collective bargaining agreement and that only the union has standing to challenge an arbitration award.  Relying upon a well-defined exception to that rule, Vargas asserts that his Union breached its duty of fair representation and, for that reason, he may step into the shoes of the Union and assert his claims.  The defendant Union moves for summary judgment asserting that there is no genuine dispute of material fact surrounding its discharge of its duty of fair representation and that it is entitled to summary judgment in its favor.  Examining all submitted pleadings, affidavits and exhibits, in a light most favorable to plaintiff, I conclude that no reasonable fact-finder could conclude that the Union has breached its duty of fair representation.  Defendants are entitled to summary judgment in their favor.

Proceedings in this court

This case was originally commenced in Supreme Court, Bronx County, and removed to this court on November 28, 2005.  This court has jurisdiction over the subject matter of this action pursuant to section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

On February 24, 2006, I issued an order granting plaintiff leave to file an amended pleading and directing that any additional motions to amend be filed within 15 days.

Plaintiff filed an Amended Verified Petition ("AVP") on March 10, 2006.  On April 17, 2006, plaintiff requested permission to further amend the pleadings.  Despite the untimeliness of the request, I waived the pre-motion conference requirement and permitted plaintiff to file a motion to amend. (Docket #18)  No motion to amend was thereafter filed by plaintiff.  However, a Second Amended Verified Petition was submitted to Chambers.  There has been no "good cause" shown as to why there was not compliance with my April 17 order.  As I advised the parties prior to the filing of the summary judgment motion, the Second Amended Verified Petition is not an operative pleading in this case and I do not consider it in determining this motion.  (See 5/12/06 Tr. at 15-16)

On June 23, 2006, defendants filed this motion for summary judgment addressed to the Amended Verified Petition.  On October 16, 2006, I issued an order directing the defendants to submit the complete record of proceedings before the New York Civil Court relating to plaintiff's claims in this action, as well as a chronology of the actions before the Civil Court.  I also invited plaintiff to submit any additional materials for my consideration by noon on October 23, 2006.  Defendants' submissions were received while nothing was submitted by plaintiff.

Background

Plaintiff was the building superintendent at 2727 University Avenue, Bronx, New York, until his dismissal on December 28, 2004. (AVP at ¶ 3)  The Union represents the service workers in the building where Vargas worked and lived. (AVP at ¶ 5)  On December 28, 2004, an agent of the defendant Employer delivered to plaintiff a letter of termination of employment. The stated ground for the termination of plaintiff's employment was that Vargas had an "illegal apartment set up in [a] basement storage room". (AVP Exh. B)  As part of his employment,

Vargas was permitted to occupy the basement superintendent's apartment. (AVP ¶ 21) According to Vargas, the Employer asserted that he was illegally occupying a party/storage space in addition to the apartment.  (AVP at ¶ 16) Vargas alleges that his employer was "on actual and constructive notice" of his occupation of the party/storage space and that the stated reason for his termination was a "sham pretext". (AVP at ¶ 22)  Vargas asserts that the stated reason was pretextual and that, in fact, he was fired because he requested a snowblower, provision of which plaintiff alleges was required under the collective bargaining agreement. (AVP at ¶¶ 10, 13, 27; AVP Exh. A)

While there is a dispute as to which collective bargaining agreement was operative at the time plaintiff's claims arose and were adjudicated, it is undisputed that the most recent agreement between the Union and Employer was signed in March 2005.  It is this March 2005 agreement which provided that Vargas's claims concerning the termination of his employment would be submitted to arbitration before Arbitrator Robert Herzog.  Vargas terms the March 2005 agreement the "secret settlement" or "secret memorandum". (AVP at ¶ 14)  Prior to execution of the March agreement, the Union had filed an unfair labor practice charge before the National Labor Relations Board on plaintiff's behalf against the Employer and S.W. Management LLC. (Vargas Aff. at ¶ 8)  Under the terms of the March 2005 agreement, this charge was withdrawn and submitted to arbitration before Arbitrator Robert Herzog.  Vargas complains of the outcome and circumstances of that arbitration.

Arbitrator Robert Herzog conducted two days of hearings on the claims of Vargas, May 19, 2005 and July 1, 2005.  Although the arbitration was conducted pursuant to a collective bargaining agreement between the Union and Employer, plaintiff chose to be represented by his own counsel, Morris Markowitz, Esq..  Prior to arbitration, plaintiff alleges

that, despite their objections, both he and Mr. Markowitz were "coerced" into signing a written

waiver.[1]  (Plaintiff's Resp. to Rule 56.1 at ¶ 29)  The waiver document states that as a result of

his choice to be represented by private counsel rather than the Union, plaintiff waived any claims

that he might have against the Union arising out of the arbitration.  (Sparer Aff. Exh. 21)  It was

executed by Vargas, Mr. Markowitz and a representative of the Union.  At the arbitration

hearing, plaintiff introduced testimony from two building residents, Ms. Dolores Nuñez and Mr.

Mandelbaum, and his union representative, Mr. Colin Forehand.  (See Vargas Dep. 91-94, 180-

82; Plaintiff's Resp. to 56.1 at ¶ 34)

       In a thirteen page opinion and award, Arbitrator Herzog found that there was "just

cause" for the Employer's termination of Vargas's employment.  He found that Vargas's

testimony was not credible and was contradicted by his own witness.  (See AVP Exh. A at 10-

12)  Nevertheless, Arbitrator Herzog granted Vargas back pay and moving expenses pursuant to

the CBA.

The New York Civil Court Proceedings

       On December 29, 2004, the day after terminating plaintiff's employment,

Employer had filed a petition in New York City Civil Court seeking eviction of Vargas from the

superintendent's apartment.  On January 28, 2005, Employer filed a second action in New York

City Civil Court seeking Vargas's ejection from a second basement space (referred to by plaintiff

in the AVP as the "party/storage space").  On March 7, 2005, a hearing was held on both matters

before the Honorable Brenda S. Spears.  Pursuant to the March 2005 agreement signed by the

Union and Employer, Vargas's eviction from the superintendent's apartment was held in

abeyance pending the outcome of the arbitration described above.  On November 7, 2005, three

---

[1] Plaintiff further claims that "a copy of the wrong incorrect waiver that did not bare any signatory to the waiver and is in direct conflict and is different from waiver presented" at Sparer Exh. 21 was used by the arbitrator in writing his opinion. (Plaintiff's Resp. to Rule 56.1 at ¶ 29)

months after the issuance of the arbitration decision adverse to Vargas, Employer filed a motion

for summary judgment for possession of the superintendent's apartment.  Vargas opposed this

motion and on February 24, 2006, the parties agreed to a stipulation of adjournment, permitting

Vargas to remain in the superintendent's apartment pending the outcome of the motion pending

before this court.  As to the action seeking the ejectment of Vargas from the party/storage space,

Judge Spears held a hearing at which she heard sworn testimony from both Vargas and

Employer's agent Tom Tucker as to the circumstances surrounding Vargas's use of the

party/storage space.  Judge Spears found adversely to plaintiff, stating that, "I cannot allow you

to stay in space that's clearly in violation of the building code.  This is not an apartment intended

to be used for anything, other than a storage facility . . . It's dangerous." (Sparer Aff. Exh 19)

Vargas's appeal of the ejectment order was denied by the Appellate Term on September 22,

2006.

The National Labor Relations Board Proceedings

On January 10, 2005, prior to the arbitration, plaintiff filed an unfair labor

practices claim before the National Labor Relations Board ("NLRB"). On July 7, 2005,

plaintiff's charge was deferred by Region 2 of the NLRB pending the outcome of the arbitration.

(See Sparer Exh. 7)  Vargas twice appealed the NLRB's deferral decision but was denied on both

occasions. (See Sparer aff. Exh 9, 10)  In denying plaintiff's request that his claim be heard

despite the arbitration proceeding, the NLRB concluded that the arbitration proceedings "were

fair and regular and all parties agreed to be bound by the results of arbitration . . . that the Union

was unsuccessful in prevailing at arbitration was not deemed to be evidence that the Employer

and Union sought to discriminate against you." (Sparer Aff. Exh 10)  Finally, on February 23,

2006, six months after the arbitration award by Arbitrator Herzog, the NLRB Regional office

wrote to plaintiff, dismissing his grievance and stating that "the Board's standards for deferral to an arbitration award have been satisfied. . . . it appears from the investigation that the arbitration proceeding was fair and regular. . . ." (See Sparer Aff. Exh. 12)

II.       Summary Judgment Standard

        Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

        When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant.  Fed. R. Civ. P. 56(e).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslandis v. U.S. Lines, Inc., 477 U.S. 242, 252 (1986)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248.  The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  <u>Allen v. Coughlin</u>, 64 F.3d 77, 79 (2d Cir. 1995) (quotations and citations omitted); <u>accord</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).  In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants.  Fed. R. Civ. P. 56(c).  In the absence of any disputed material fact, summary judgment is appropriate.  <u>Id.</u> Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d Cir. 1996) (citing <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587 (1986)).  <u>See also</u> <u>Anderson</u>, 477 U.S. at 249-50 (noting that summary judgment should be granted if the evidence is "merely colorable" or "not significantly probative").

III.    <u>Discussion</u>

Defendants assert that the arbitration award bars plaintiff's claims and that plaintiff lacks standing to challenge the arbitration award.  "[A]n individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." <u>Katir v. Columbia Univ.</u>, 15 F.3d 23, 24 (2d Cir. 1994).  Vargas does not contend that he was a party to the arbitration agreement. However, a plaintiff may bring suit under section 301 of the Labor Relation's Management Act where the plaintiff can demonstrate that there has been a breach of the duty of fair representation on the part of the union.  <u>Id.</u> at 24-25.  Underlying this exception is the notion that a claim

brought under section 301 is effectively two claims, one against the employer for violation of section 301 and one against the union for breach of the duty of fair representation.  As such, to establish a hybrid section 301/duty of fair representation claim, a plaintiff must make the dual showing that (1) the employer breached a collective bargaining agreement; and (2) the union breached its duty of fair representation to the union member. See DelCostello v. Int'l Bd. of Teamsters, 462 U.S. 151, 164-65 (1983).  Because the two claims against the employer and union are "inextricably interdependent," a plaintiff's ability to sue their employer is contingent on the threshold showing that the union breached its duty of fair representation.  See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 62 (1981) (stating that an "indispensable predicate" of a section 301 action is a "demonstration that the Union breached its duty of fair representation.")

       To state a claim for relief on a hybrid section 301/duty of fair representation claim, the non-moving party is required to articulate specific facts demonstrating bad faith, discrimination or arbitrariness on the part of the union. See White v. White Rose Food, 237 F.3d 174, 179 (2d Cir. 2001)(citing Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998)). "Conclusory allegations without specifying supporting facts to show a union's lack of good faith fail to state a valid claim." Spielmann v. Anchor Freight. Inc., 551 F. Supp. 817, 822 (S.D.N.Y. 1982).

       To survive a motion for summary judgment, plaintiff must come forward with facts demonstrating a triable issue of fact as to whether the Union engaged in "fraudulent, deceitful, or dishonest action." Sim v. New York Mailers' Union No. 6, 166 F.3d 465, 472 (2d Cir. 1999).  "A union breaches its duty of fair representation if its actions 'can fairly be characterized as so far outside a wide range of reasonableness . . . that [they are] wholly arbitrary, discriminatory, or in bad-faith.'" Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120,

126 (2d Cir. 1998) (quoting <u>Airline Pilots Ass'n Int'l v. O'Neill</u>, 499 U.S. 65, 67 (1991)); <u>see also</u> <u>Marquez</u>, 525 U.S. at 4 (citations omitted).  Plaintiff does not contend that the Union's actions were discriminatory.  He argues that the Union's actions were arbitrary and in bad faith.

   Viewing all of the evidence in a light most favorable to plaintiff, no reasonable fact-finder could conclude that the Union acted in bad faith or arbitrarily and, thus, breached its duty of fair representation.  The thrust of Mr. Vargas's lengthy and somewhat obscure pleading is the contention that the Union acted in bad faith by (1) failing to "ethically or zealously represent the Petitioner during the arbitration process and at other times" (Vargas Aff. at ¶ 40); (2) lying to the Civil Court about the presence of a CBA thereby prejudicing Vargas, (AVP at ¶ 59); (3) entering into a "secret settlement" agreement with the defendant Employer which compelled Mr. Vargas to "forfeit the right to remain in possession of the superintendent's apartment and waive his right to a stay of all ejectment proceedings . . . ."(Vargas Aff. at ¶ 62), and (4) failing to ensure that the Arbitrator explicitly addressed both the unfair labor practices claim withdrawn from before the NLRB and the ejectment claims concerning the party space, (Plaintiff's Resp. to R. 56.1 at ¶ 9).

   As to the assertion that the Union failed to adequately represent him at the arbitration, it was plaintiff's decision not to be represented by the Union during the course of the arbitration proceedings.  (<u>See</u> AVP Exh. A at 4)  Plaintiff alleges that prior to the May 19 arbitration session, plaintiff and his attorney, Mr. Markowitz, were "coerced" into signing a waiver presented by the Union.  The written waiver recites that plaintiff agreed to waive any claim he might have against the Union "in connection with their obligation to represent me in this arbitration proceeding". (<u>See</u> AVP Exh. A at 4)  No threatened use of force is claimed. No threat of withholding an entitlement is asserted.  No improper benefit was offered.  The claim of

coercion is entirely conclusory and is insufficient to raise a triable issue of fact.  The undisputed

fact remains that Vargas selected private counsel to represent him at the arbitration who appeared

and acted on his behalf.

   Plaintiff next contends that the Union lied about the existence of any CBA,

including the March 2005 agreement, to the Civil Court hearing the ejectment proceeding and

failed to represent plaintiff in that proceeding. (See plaintiff's Resp. to 56.1 at ¶ 24, "the

agreement entered into between union local 32BJ and the alleged employer 2727 Realty LLC

was a secret one which . . . was not told to the Bronx Housing Court on March 7, 2005, to the

great prejudice of Mr. Vargas."; Id at ¶ 10, "Union Local 32BJ and its attorneys along with Mr.

Vargas alleged employer 2727 Realty LLC and their attorneys knowingly acted in a joint

corrupt, collusion matrimony and withheld information to the NLRB and this court and all other

courts. . . .")

   In support of his allegations that the Union lied to the Civil Court about the

existence of a CBA, Vargas alleges that a letter was written from the Union to the New York

City Civil Court on February 16, 2005 both denying that any CBA existed and stating that the

Union would therefore not represent Vargas in the ejectment proceeding. (AVP at ¶ 57)  Vargas

claims that this is evidence of an act of deception which constitutes bad faith on the part of the

Union.  However, a fundamental flaw at the foundation of plaintiff's claims is his belief that a

CBA was in effect either at the time of his firing on December 27, 2005 or at the time that the

Union wrote to the Civil Court in February 2005.

   The presence, or absence, of a collective bargaining agreement determines the

rights and obligations that all parties have both to and against each other.  Plaintiff contends that

a collective bargaining agreement signed in June 1998 was effective at the time his claims arose

by virtue of an automatic renewal provision contained in that agreement.  Plaintiff alleges that as

the June 1998 CBA was never terminated, it renews automatically on a year-to-year basis and

that any subsequent CBAs are "illegal" or not effective.  Defendants, however, contend that there

have been several superseding CBAs signed in January 1999 and March 2005.  The January

1999 CBA took the form of a memorandum of understanding which was signed by the plaintiff.[2]

Although the document on its face states that it is a CBA, Vargas does not view the January 1999

agreement as a CBA, stating that "it was two pieces of paper that was not honor, was not honor

and two pieces of papers that did not alter the contract, but the arbitrated award, that's all."

(Vargas Dep. at 52/16-21)  The January 1999 agreement contained incorporated terms from a

CBA signed between the Union and Employer in 1995 but specifically excluded any inconsistent

terms from any prior CBA.[3]  Critically, the January 1999 agreement was a fixed-term agreement,

expiring on June 30, 2001, and did not contain, or incorporate, any automatic renewal provision.

Although it is admittedly confusing that the January 1999 agreement makes no reference to the

June 1998 CBA, it remains the fact that the January 1999 CBA expired June 30, 2001.  It,

therefore, appears that there was no CBA in effect between June 30, 2001 and March 1, 2005.

Further, the agreement which was signed between the Union and Employer in March 2005 was

not effective until March 1, 2005.  As such, when the Union wrote to the court on February 16,

2005 stating that there was no CBA in effect, the statement was accurate.

        Moreover, counsel did not lie to the court during the hearing held on March 7

about the presence of a CBA.  When Vargas appeared in Civil Court on March 7, 2005, counsel

for the Employer explicitly stated to the court that the proceeding relating to the superintendent's

---

[2] While plaintiff asserts that he signed the January 1999 CBA "u.p. (under protest) which was somehow eliminated from the document so only signature appear", Vargas Aff. at p.9, plaintiff does not contest the terms contained in the document or that he did sign a version of the agreement which is substantively the same. (Vargas Dep. pp.55-61)
[3] The 1995 agreement was not submitted by either party.

apartment was "in binding arbitration" pursuant to agreement of the parties.  (See Sparer Aff. Exh. 19 at 3/6-22)  While not explicitly referring to the agreement by name or as a CBA, there is no evidence to indicate that counsel for the Employer hid the presence of an agreement from the court.  The Union did not represent Vargas at these proceedings because, as Vargas concedes, the Civil Court found that the ejectment claim was a "non-union" issue.[4]  Furthermore, as a practical matter, any statements made to the Civil Court would only be attributable only to Employer and not the Union. See Sim, 166 F.3d at 472 ("[E]stablishing that the union's actions were sufficiently 'arbitrary, discriminatory or in bad faith' is only the first step toward proving a fair representation claim. Plaintiffs must then demonstrate a causal connection between the union's wrongful conduct and their injuries. . .") (quoting Spallacy, 156 F.3d at 126).

Plaintiff also points to the very creation of the March 2005 agreement.  Vargas alleges that the Union acted in bad faith by entering an "illegal" agreement which was "signed in great prejudice of Mr. Vargas and without his knowledge or consent". (See Plaintiff's Mem. in Opp. at 8)  Plaintiff's specific allegations of bad faith and arbitrariness concerning the execution of the March 2005 agreement seem to be that he neither approved it nor was he informed of its existence until arbitration commenced. (See Plaintiff's Mem in Opp. at 19, 21)

Vargas's assertion that because he was not a party to the March 2005 agreement, it was "deceitful and dishonest and violated my [Vargas'] due process rights" is without basis in fact or law. (See Vargas' Aff. at ¶ 9)  As a threshold matter, the Union was not required to

---

[4] Plaintiff cites to "trial transcript, page 55, lines 11-25" and goes on to state that he is "now submitting the entire trial transcript of said case under index no. 9849/05" but fails to do so.  On October 16, 2006, I requested that Employer's counsel submit the record of the proceedings before the Civil Court in an effort to clarify plaintiff's claims before this court.  Employer's submissions indicate that in prior proceedings held before Judge Mitchell Danzinger, the Union entered an initial appearance on plaintiff's behalf but then requested to withdraw as counsel. The request was consented to by both sides and Judge Danzinger's order permitted the Union to withdraw from the ejectment proceedings. (See Siebel Aff. Exh. A at 5-6) The case was then transferred to Judge Spears for a trial where Judge Spears stated that the "collective bargaining agreement is not part of this [the ejectment] case". (See Siebel Aff. Exh. A at 55)  As the ejectment was a non-union issue, the Union was not required under any CBA to represent Vargas.

involve Vargas in the process of negotiating a CBA. See 29 U.S.C. § 159(a) (1970)(union is the exclusive bargaining agent of its members for purposes of collective bargaining agreements). While a union's exclusive bargaining power requires that it act fairly and not in breach of its duty of fair representation, "[f]ederal labor law does not require rank-and-file ratification of employer-union agreements." White, 237 F.3d at 182.  Further, the Supreme Court has noted that review of a union's decisions during collective bargaining must be conducted through a deferential lens. See O'Neill, 499 U.S. at 78 ("Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.").  In examining whether a union's actions are in bad faith or arbitrary, courts "evaluat[e] the rationality of a union's decision in light of both the facts and the legal climate that confronted the negotiators at the time the decision was made . . . ." Id.

Here, plaintiff has failed to come forward with any evidence that the March 2005 agreement was executed in bad faith or that the Union acted arbitrarily in their negotiations. Rather than disadvantaging plaintiff, the March 2005 agreement objectively benefits plaintiff. The agreement allows plaintiff to reside in the superintendent's apartment pending outcome of any arbitration proceeding.  In fact, plaintiff continues to "occupy as an employee part of the premises as living quarters" pending the outcome of this action. (Vargas Aff. at ¶ 18)  It additionally provides plaintiff with a new CBA containing wage and pension increases.  Further, it complies with the NLRB's policy of encouraging arbitration of claims.  See United Techs. Corp., 268 NLRB 557, 558 (1984).  Plaintiff alleges that the March 2005 agreement works to his detriment as he is required to "forfeit the superintendent's apartment" while the arbitration was pending. (Vargas Aff. at ¶ 62)  The text of the March agreement, however, explicitly states that

the "eviction case commenced by the employer presenting pending in Civil Court Bronx County

. . . will be stayed pending the outcome of the arbitration". (AVP Exh. E)

        Moreover, plaintiff's assertion that he was not made aware of the agreement until

May 19, 2005 is immaterial.  As a factual matter, it appears that plaintiff was made aware of

some arbitration agreement at the Civil Court proceedings on March 7, 2005. (See Sparer Aff.

Exh. 19)  Even assuming that plaintiff was not made aware of the agreement until arbitration, it

is immaterial since, as discussed above, the March 2005 agreement did not in any way prejudice

plaintiff at the arbitration.  While plaintiff's counsel may wish that he had sooner received the

agreement, that alone does not constitute bad faith nor is it the cause of any injury to Vargas.

        Finally, plaintiff asserts that as a result of the March 2005 agreement and acts of

deception by the Union, less than all of his claims were submitted to the arbitrator. (See

Plaintiff's Aff. ¶ 9)  The March 2005 agreement did not implicitly or explicitly limit the claims

that plaintiff could assert before the arbitrator.  Plaintiff's contention that he was not permitted to

submit to the arbitrator the claim asserted before the NLRB is contradicted by his own deposition

testimony.  At his deposition, plaintiff was asked "Did Mr. Markowitz make the argument to the

arbitrator that you were fired for union activity?" to which plaintiff responded, "Mr. Markowitz

presented all the evidence and all the things that was related for my illegal and unjust firing".

(See Vargas Dep. at 172-73)  Further, plaintiff does not contest defendants' Rule 56.1 statement

that evidence of wrongful discharge for union activity was presented at arbitration but rather

acknowledges that "point 26 in the defendants' joint statement, it is true . . . ." and continues to

assert that Arbitrator Herzog did not properly, or more aptly favorably, consider plaintiff's

argument. (See Plaintiff's Resp. to 56.1 at ¶ 32)  While plaintiff also asserts that he was unable to

present his claim for ejectment from the party/storage space to the arbitrator, those claims were
adjudicated by the Civil Court.

Conclusion

Drawing all inferences in favor of the non-movant, no reasonable fact-finder
could conclude, on the evidence of record on this motion, that the defendant Union breached the
duty of fair representation. A breach of the duty of fair representation is a threshold requirement
to maintenance of a cause of action against a union and employer under section 301. Summary
judgment is GRANTED in favor of defendants. All other relief sought by either party is denied.
The Clerk shall enter judgment in favor of defendants.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       October 23, 2006

16